LAW OFFICES OF BRANDON A. BLOCK
A PROFESSIONAL CORPORATION
BRANDON A. BLOCK (Cal. Bar No. 215888)
brandon@bblocklaw.com
9440 Santa Monica Boulevard, Suite 301
Beverly Hills, California 90210
Telephone: 424.600.9454
Facsimile: 424.600.9631

Attorneys for Plaintiff CHINONSO OHUCHE and the putative class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINONSO OHUCHE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOVEST, L.L.C.,<br><br>Defendant. | Case No. 2:21-cv-06376-JAK-PVC<br><br>Judge John A. Kronstadt<br><br>**CLASS ACTION**<br><br>**NOTICE OF PLAINTIFF CHINONSO OHUCHE'S MOTION AND MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declarations of Brandon A. Block and Chinonso Ohuche, and [Proposed] Order Granting Preliminary Approval of Class Action Settlement, filed concurrently]<br><br>Date:     August 1, 2022<br>Time:     8:30 a.m.<br>Ctrm:     10B<br><br>Action filed:     April 19, 2021 |

**TO THE COURT, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 1, 2022, at 8:30 a.m., or as soon thereafter as counsel may be heard in Courtroom 10B of the above-entitled Court, located at 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, plaintiff Chinonso Ohuche, individually and on behalf of the proposed settlement class, will and hereby does move the Court to enter the concurrently lodged [Proposed] Order Granting Preliminary Approval of Class Action Settlement, thereby preliminarily approving the parties' proposed class action settlement of this action, provisionally certifying the proposed settlement class, approving the content and dissemination of the proposed class notice regarding the settlement, and scheduling a final approval hearing. The motion, which is unopposed, is made pursuant to Federal Rules of Civil Procedure 23(a) and (b) and the parties' Settlement Agreement and Release, and is based upon this Notice of Motion and Motion, and the concurrently filed Memorandum of Points and Authorities, the Declarations of Brandon A. Block and Chinonso Ohuche, the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

This motion is unopposed and required by the parties' parties' Settlement Agreement and Release. Conferences of counsel pursuant to L.R. 7-3 regarding the subject matter of the motion took place on several dates as part of the negotiations of the Settlement Agreement and Release.

Respectfully submitted,

Dated: April 22, 2022

LAW OFFICES OF BRANDON A. BLOCK
A PROFESSIONAL CORPORATION

/s/ Brandon A. Block
Brandon A. Block

Attorneys for Plaintiff
CHINONSO OHUCHE and the putative class

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

        A.      Underlying Facts ....................................................................... 2

        B.      Plaintiff's FAC .......................................................................... 2

        C.      Autovest's Defective Statutory Notice.................................... 3

        D.      The Proposed Settlement.......................................................... 7

II.     KEY TERMS OF THE SETTLEMENT .............................................. 7

III.    ARGUMENT ........................................................................................ 10

        A.      The Court Should Conditionally Certify The Settlement Class........... 10

                1.      The Settlement Class Meets The Requirements Of
                        Fed. R. Civ. P. 23(a). ................................................. 11

                        a.      The Numerosity Requirement Is Met. ........................... 11

                        b.      The Commonality Requirement Is Met. ......................... 12

                        c.      The Typicality Requirement Is Met............................... 13

                        d.      The Adequacy Requirement Is Met............................... 13

                2.      The Settlement Class Meets The Requirements Of
                        Fed. R. Civ. P. 23(b)(3). ............................................. 14

                        a.      Common Questions Of Law Or Fact Predominate.......... 14

                        b.      A Class Action Is Superior To Other Methods For
                                The Fair And Efficient Adjudication Of The
                                Controversy. ................................................. 15

        B.      The Court Should Preliminarily Approve The Settlement
                Agreement. ......................................................................... 16

                1.      The Strength Of Plaintiff's Case Balanced Against The
                        Risk, Expense, And Likely Duration Of Further Litigation
                        Weighs In Favor Of The Settlement. ......................... 17

                2.      The Amount Offered In Settlement Is Substantial.................... 18

3.   Class Counsel Has Conducted Sufficient Discovery And Investigation .................................................................. 19

4.   The Settlement Is The Result Of Arm's Length Negotiations. ................................................................. 19

5.   Experienced Class Counsel Recommends The Settlement ........ 20

C.   The Anticipated Attorney's Fees And Costs Award Is Reasonable. .......................................................................... 21

D.   The Anticipated Incentive Award Is Reasonable. ............................... 23

E.   The Court Should Approve The Proposed Class Notice And Notice Plan. ........................................................................... 23

IV.   CONCLUSION ............................................................................ 24

# TABLE OF AUTHORITIES

**Federal Cases**

Acosta v. Trans Union, LLC, 243 F.R.D. 377 (C.D. Cal. 2007) ................................16

Alikhan v. Goodrich Corp., No. CV 17-6756 JGB (RAOx), 2020 WL
4919382 (C.D. Cal. June 25, 2020) ................................................10, 23

Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997)........................................10, 14

Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001), abrogated on other grounds
by Johnson v. Cal., 543 U.S. 499 (2005)........................................................12

Avery v. First Resolution Mgmt. Corp., 568 F.3d 1018 (9th Cir. 2009)...................21

Blair v. Rent-A-Center, Inc., 928 F.3d 819 (9th Cir. 2019) ......................................18

Chan v. Sutter Health Sacramento Sierra Region, No. LA CV15-02004 JAK
(AGRx), 2017 WL 819903 (C.D. Cal. Feb. 14, 2017) ...............................................10

Chan v. Sutter Health Sacramento Sierra Region, No. LA CV15-02004 JAK
(AGRx), 2016 WL 7638111 (C.D. Cal. June 9, 2016)..................................10, 17, 20

Ellis v. Costco Wholesale Corp., 657 F.3d 970 (9th Cir. 2011).................................13

Gant v. Aldi, Inc., No. LA CV19-03109 JAK (PLAx), 2021 WL 3472835
(C.D. Cal. Jan. 26, 2021) .........................................................11, 12, 13, 15, 16

Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147 (1982)..................................................12

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1997)........................12, 13, 14, 15

Hanon v. Dataproducts Corp., 976 F.2d 497 (9th Cir. 1992) ..............................11, 13

Hawthorne v. Umpqua Bank, No. 11-cv-06700-JST, 2015 WL 1927342 (N.D.
Cal. Apr. 28, 2015) ......................................................................................23

Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964) ..............11

Hartless v. Clorox Co., 273 F.R.D. 630 (S.D. Cal. 2011) .........................................23

Hodges v. Comcast Cable Comm., LLC, 21 F.4th 535 (9th Cir. 2021) ....................18

In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935 (9th Cir. 2011)...............21

In re Cooper Cos. Inc. Sec. Litig., 254 F.R.D. 628 (C.D. Cal. 2009)........................11

In re Hyundai & Kia Fuel Economy Litig., 926 F.3d 539 (9th Cir. 2019)................14

In re Lorazepam & Clorazepate Antitrust Litig., No. MDL 1290(TFH), 2003
WL 22037741 (D.D.C. June 16, 2003)........................................................20

In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104 (S.D. N.Y. 1997).................20

Lane v. Facebook, Inc., 696 F.3d 811 (9th Cir. 2012)..........................................16, 17

Linney v. Cellular Alaska P'ship, 151 F.3d 1234 (9th Cir. 1998).............................17

MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co., 197 F.3d 1276 (9th Cir. 1999).........21

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523 (C.D. Cal.
2004) .......................................................................................................20

Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco,
688 F.2d 615 (9th Cir. 1982) .....................................................................16

Rannis v. Recchia, 380 Fed. App'x 646 (9th Cir. 2010) ...........................................11

Richardson v. THD At-Home Servs., Inc., No. 1:14-cv-0273-BAM, 2016 WL
1366952 (E.D. Cal. Apr. 6, 2016)................................................................23

Rodriguez v. W. Publ'g Corp., 563 F.3d 948 (9th Cir. 2009) ...............................17

Schlieser v. Sunrise Senior Living Mgmt. Inc., No. LA CV19-00443 JAK
(PLAx), 2021 WL 6752320 (C.D. Cal. July 6, 2021) ....................................10, 15, 16

Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003)................................................16

Torres v. Mercer Canyons Inc., 835 F.3d 1125 (9th Cir. 2016) ................................14

Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036 (2016)........................................14

Valentino v. Carter-Wallace, Inc., 97 F.3d 1227 (9th Cir. 1996)............................11

Van Vranken v Atlantic Richfield Co., 901 F.Supp. 294 (N.D. Cal. 1995)...............23

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011) ...................................11, 12, 13

Zinser v. Accufix Res. Inst., Inc., 253 F.3d 1180 (9th Cir. 2001) .............................14

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 23.....................................................................................................2

Fed. R. Civ. P. 23(a) ............................................................................................11, 13

Fed. R. Civ. P. 23(a)(1)-(4).......................................................................................11

Fed. R. Civ. P. 23(a)(1)............................................................................................11

Fed. R. Civ. P. 23(a)(2)................................................................12

Fed. R. Civ. P. 23(a)(3)................................................................13

Fed. R. Civ. P. 23(a)(4)................................................................13

Fed. R. Civ. P. 23(b)...................................................................11

Fed. R. Civ. P. 23(b)(3)........................................................11, 14, 15

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................23

Fed. R. Civ. P. 23(e) ..................................................................16

**State Cases**

Bank of Amer. v. Lallana, 19 Cal.4th 203 (1998) .......................................3

Chavez v. Netflix, Inc., 162 Cal.App.4th 43 (2009)....................................22

Cortez v. Purolator Air Filtration Prods., 23 Cal.4th 163 (2000) .....................18

In re Consumer Privacy Cases, 175 Cal.App.4th 545 (2009)...........................22, 23

Juarez v. Arcadia Fin., Ltd., 152 Cal.App.4th 889 (2007) .........................3, 4, 5

Ketchum v. Moses, 24 Cal.4th 1122 (2001) ........................................21, 22

Serrano v. Priest, 20 Cal.3d 25 (1977).................................................21

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200, et seq. ..............................................2

Cal. Civ. Code § 1542...................................................................8

Cal. Civ. Code §§ 2981, et seq. ........................................................1

Cal. Civ. Code § 2983.2(a) ................................................1, 2, 6, 12, 18

Cal. Civ. Code § 2983.2(a)(1) .....................................................4, 5, 6

Cal. Civ. Code § 2983.2(a)(2) ..................................................3, 4, 5, 6

Cal. Civ. Code § 2983.2(a)(3) .........................................................5

Cal. Civ. Code § 2983.2(a)(4) .........................................................6

Cal. Civ. Code § 2983.2(a)(5) .....................................................4, 5, 6

Cal. Civ. Code § 2983.2(a)(6) .........................................................5

Cal. Civ. Code § 2983.4................................................................21

Cal. Civ. Code § 2983.8..........................................................1, 12, 18

Cal. Civ. Proc. Code § 1021.5 ........................................................................21

Cal. Gov. Code § 26751 ..............................................................................4, 5

Cal. Veh. Code § 28 ......................................................................................4, 5

# I.   **INTRODUCTION**

Rees-Levering Automobile Sales Finance Act, Cal. Civ. Code §§ 2981, et seq. ("RLA"), governs the financing of motor vehicle purchases in California. Civil Code § 2983.2(a), in particular, requires sellers or holders of purchase contracts to issue a detailed written notice regarding a buyer's statutory rights of reinstatement and redemption after repossession or voluntary surrender of the buyer's vehicle (hereinafter, "Statutory Notice"). If a Statutory Notice omits or misstates any disclosure required by § 2983.2(a), the seller or holder of the contract is barred from collecting a deficiency balance (i.e., the amount remaining on the buyer's account after deducting the sale proceeds from the sale of the vehicle). See Cal. Civ. Code §§ 2983.2(a) and 2983.8.

Plaintiff Chinonso Ohuche's vehicle was repossessed by defendant Autovest, L.L.C., a Michigan-based buyer of distressed automobile finance portfolios. Plaintiff alleges in this putative class action that Autovest issued a Statutory Notice to him and other similarly situated buyers which omitted or misstated many of the disclosures required by Civil Code § 2983.2(a), and that, as a result, Autovest is barred from collecting any alleged deficiency balances on their accounts.

After substantial arms-length settlement negotiations led by experienced class action lawyers over the course of many months, the parties have signed a written Settlement Agreement and Release ("Settlement Agreement") resolving this entire action, subject to the Court's approval. See Declaration of Brandon A. Block, ¶ 2, Ex. 1. The non-reversionary settlement achieved in this case is an excellent result for the putative class, in that it requires Autovest to provide essentially all of the relief requested in plaintiff's operative First Amended Complaint ("FAC"), including that:

- Autovest will permanently waive any right to collect 100% of the claimed deficiency balances as to all class members, which comprises 76 accounts and approximately $845,210 in deficiency balances;

- Without any claims process, Autovest automatically will reimburse those class members who paid on their deficiency balances 100% of the amount it has collected (in total, approximately $14,281);

---

MOTION FOR PRELIMINARY APPROVAL – 1

- Autovest will never report any information regarding class members' accounts to any credit reporting agency ("CRA");
- Autovest will *separately* pay all administrative and notices costs; and
- Autovest will *separately* pay an incentive award of $5,000 to plaintiff for his service as the class representative, and Autovest will *separately* pay plaintiff's attorney's fees and costs in the amount of $60,000.

Plaintiff now respectfully requests that the Court preliminarily approve the parties' settlement. As detailed herein, the settlement class meets all of the requirements for conditional certification under Federal Rule of Civil Procedure 23, and the settlement is eminently fair, adequate and reasonable, in that it provides substantial and meaningful benefits to the putative class, without any procedural impediments or reduction to account for administrative or litigation costs, attorney's fees or the incentive award.

## A.   <u>Underlying Facts</u>

Plaintiff purchased a motor vehicle for personal, family or household purposes from a car dealership pursuant to a conditional sale contract, as defined and regulated by the RLA. Dkt. 22 (FAC), ¶ 5. After Autovest purchased plaintiff's account from another finance company, it repossessed plaintiff's vehicle based on an alleged payment default under the contract. Id., ¶¶ 5-6. Autovest then issued a Notice of Intention to Dispose of Motor Vehicle – Plan to Sell Property (i.e., a Statutory Notice) to plaintiff. Id., ¶ 6, Ex. 1. Autovest subsequently sold plaintiff's car at auction, and, after applying the sale proceeds, assessed a deficiency balance on plaintiffs' account, which Autovest tried to collect from him. Id., ¶ 9, Ex. 2.

## B.   <u>Plaintiff's FAC</u>

Plaintiff's FAC asserts claims for violations of the RLA and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, <u>et</u> <u>seq.</u> ("UCL"). Plaintiff's claims are premised on the core allegation that Autovest is barred from collecting any deficiency balance on his account because the Statutory Notice Autovest issued to him is defective under Civil Code § 2983.2(a). <u>See</u>, <u>infra</u>, § II(C)

(discussing defects). This is an area of strict compliance. A creditor is barred from collecting a deficiency balance if its Statutory Notice does not accurately set forth all of the disclosures required by the RLA. See Cal. Civ. Code § 2983.2(a) (providing that a borrower is liable for a deficiency balance "only if" the Statutory Notice contains "all" of the disclosures mandated by § 2983.2(a)); id., § 2983.8 (providing that no seller or holder of a conditional sale contract may obtain a deficiency judgment, and "no deficiency judgment shall lie in any event," unless a court has determined that the sale or other disposition of a repossessed or surrendered vehicle was in conformity with the RLA). As held by the California Supreme Court: "[T]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." Bank of Amer. v. Lallana, 19 Cal.4th 203, 215 (1998); see also Juarez v. Arcadia Financial, Ltd., 152 Cal.App.4th 889 (2007).

Plaintiff is pursuing a class action because the Statutory Notice he received from Autovest is a form notice which it has issued to all buyers whose cars have been repossessed or surrendered in California during the four years preceding the filing of this action, and, as a routine business practice, Autovest has sought collection of deficiency balances from those persons. FAC, ¶¶ 10-20. Plaintiff seeks to eliminate the alleged deficiency balances from his and putative class members' accounts, and to obtain restitution of any monies paid by class members towards their deficiency balances. See id., ¶¶ 21-37, and 12:15-13:2 (Prayer for Relief).

## C.   **Autovest's Defective Statutory Notice**

Plaintiff alleges that Autovest's Statutory Notice violated the RLA in at least the following ways:

**Failure to Disclose Payments Coming Due.** Civil Code § 2983.2(a)(2) requires a Statutory Notice to set forth "all conditions precedent" to reinstatement. In the seminal Statutory Notice case of Juarez v. Arcadia Financial, 152 Cal.App.4th 889, the California Court of Appeals held that, in order to comply with

§ 2983.2(a)(2) and properly disclose all conditions precedent to reinstatement, a Statutory Notice "must inform the buyer regarding any additional monthly payments that will come due before the end of the notice as well as of any late fees or other fees, the amounts of these additional payments or fees and when the additional sums will become due." Id., at 905. Autovest's Statutory Notice violated § 2983.2(a)(2) because it failed to disclose the due dates and amounts of the "Payments to come due" and "Each late charge" plaintiff would have to pay to reinstate his contract. Also, in violation of Civil Code § 2983.2(a)(5), the Statutory Notice did not state the name of the person or office to whom plaintiff had to pay the "Payments to come due" and "Each late charge."

**Insufficient Information Regarding Storage and "Other" Charges.**
Autovest's Statutory Notice stated that plaintiff had to pay "Storage at the date rate of" $15 in order to reinstate his contract or redeem his vehicle, but it failed to state when such storage charges began accruing. The Statutory Notice also stated that plaintiff had to pay an "Other" charge of $100 for reinstatement, but it failed to state the nature of the charge. These omissions render the Statutory Notice defective under Civil Code §§ 2983.2(a)(1) and (a)(2) because plaintiff had to contact Autovest or a third party to obtain the actual amount of storage charges he would have to pay, and to determine the nature of the "Other" charge. See Juarez, 152 Cal.App.4th at 904-5 (requiring the consumer to obtain any information by "contacting the lender or gleaning it from other sources" is unlawful). Moreover, in violation of Civil Code § 2983.2(a)(5), the Statutory Notice didn't state the name of the person or office to whom plaintiff had to pay the storage and "Other" charges.

**Failure to Accurately Disclose Law Enforcement Fee.** Government Code § 26751 and Vehicle Code § 28 require a consumer to pay a $15 fee to the law enforcement agency to which a repossession was reported and provide proof of the payment to the entity holding the vehicle in order to re-obtain possession of it. Thus, paying the $15 fee is a "repossession cost and fee" for purposes of redemption, see

Cal. Civ. Code § 2983.2(a)(1), and paying and providing proof of payment of the fee are "conditions precedent" to reinstatement. <u>See</u> <u>id.</u>, § 2983.2(a)(2). Accordingly, a failure to properly disclose the law enforcement fee renders a Statutory Notice "meaningless." <u>Juarez</u>, 152 Cal.App.4th at 905-6. Here, Autovest's Statutory Notice disclosed the law enforcement fee had to be paid, but only "if applicable." The $15 law enforcement fee is not conditional; it is required by law whenever a vehicle is repossessed. <u>See</u> Cal. Govt. Code § 26751; Cal. Veh. Code § 28. The consumer would have to contact Autovest or a third party to find out whether he or she actually would have to pay the law enforcement fee, which, under <u>Juarez</u>, renders a Statutory Notice defective. <u>See</u> <u>Juarez</u>, 152 Cal.App.4th at 904-5. Moreover, the Statutory Notice didn't state the name of the person or office to whom plaintiff had to pay the law enforcement fee, which violates Civil Code § 2983.2(a)(5).

**Defective Extension Request Form.** Civil Code § 2983.2(a)(6) requires the creditor to automatically extend the reinstatement and redemption deadlines by 10 days if the buyer(s) requests it, and to disclose the automatic extension right in a Statutory Notice. Also, Civil Code § 2983.2(a)(3) requires a Statutory Notice to include a separate form for the buyer(s) to request the extension, which must be limited to the extension request and spaces for the buyer(s) to sign and date the form. The obvious intent of this provision is to make it easy for the buyer(s) to get 10 more days to exercise the statutory right of reinstatement or redemption, and eliminate any chance that a lender might reject an extension form for failure to provide extra information, like printed names, or account numbers. Here, Autovest's Statutory Notice violated Civil Code § 2983.2(a)(3) by failing to include a proper extension request form because it was not limited to the extension request, and spaces for plaintiffs to sign and date the form. The extension request form in Autovest's Statutory Notice improperly required plaintiff to write in his name, account information and address, and possibly face rejection if he failed to accurately do so.

**Failure to Disclose Repossession Agency As Possible Place of Return of Vehicle.** Civil Code § 2983.4(a)(4) requires a Statutory Notice to disclose "the place at which the motor vehicle will be returned to [the buyer] upon redemption or reinstatement." Autovest's Statutory Notice stated that plaintiff had to pay "Storage" charges to Coastline, the repossession agency which took his car, in order to reinstate his contract or redeem his vehicle. If that was true, Coastline had possession of plaintiff's vehicle during the reinstatement/redemption period, and that would have been the place at which the vehicle would have been returned to plaintiff had he reinstated his contract or redeemed his vehicle before it was transported to the auction company. Still, the Statutory Notice didn't disclose Coastline as a possible place of return of his vehicle upon reinstatement or redemption.

**Failure To Disclose Auction Fees.** In violation of Civil Code §§ 2983.2(a)(1), and (a)(2), Autovest's Statutory Notice failed to inform plaintiff that he would have to pay certain auction fees to obtain possession of his vehicle from the auction company upon reinstatement or redemption, such as administrative fees, vehicle storage fees, and transportation fees. In violation of Civil Code § 2983.2(a)(5), the Statutory Notice also failed to designate the name and address of the auction company to whom plaintiff had to pay these fees.

**Failure To Properly Disclose Redemption Amounts.** A Statutory Notice has to itemize "any delinquency, collection or repossession costs and fees" in connection with the buyer's redemption right. Cal. Civ. Code § 2983.2(a)(1). Interest is one such fee, but Autovest's Statutory Notice failed to itemize the amount of interest plaintiff needed to pay to redeem his vehicle.

**Insufficient Notice.** A vehicle cannot be sold less than 20 days after the issuance of a Statutory Notice which is mailed to or from a location outside California. Cal. Civ. Code § 2983.2(a). Autovest mailed plaintiff's Statutory Notice on March 1, 2021, from Michigan. Plaintiff's vehicle was sold on March 19, 2021

1  (i.e., less than 20 days after notice was given). Autovest, therefore, failed to provide

2  plaintiff with sufficient notice under the RLA.

3  **D.**    **The Proposed Settlement**

4      Plaintiff initially filed this case as an individual action with a request for

5  public injunctive relief under the UCL enjoining Autovest from violating California

6  law with respect to Statutory Notices and deficiency collections. Block Decl., ¶ 7.

7  The parties began discussing settlement of plaintiff's claims with a possible public

8  injunction in May 2021, and, in June 2021, the negotiations evolved into discussing

9  a potential class action settlement. Id., ¶¶ 10-11. Autovest preferred a class action

10 settlement affording meaningful relief to the class, so that it could effectively "buy

11 peace" from the claims of all class members, whereas a settlement with a public

12 injunction only might leave it open to future litigation. For many months thereafter,

13 the parties, through counsel (all of whom are experienced in consumer class action

14 litigation), actively negotiated a class action settlement. Id., ¶ 11.

15     Ultimately, the parties were able to reach a settlement of this entire action on

16 a class basis. The settlement is memorialized in a thoroughly negotiated Settlement

17 Agreement, executed at the end of March 2022. See Block Decl., ¶¶ 2 and 13, Ex. 1.

18 The Settlement Agreement resolves this entire action, subject to the Court's

19 approval. As stated in § 2.03 of the Settlement Agreement, the parties didn't discuss

20 the issues of plaintiff's incentive award, or his attorney's fees and costs, until after

21 they had agreed in principle as to all issues relevant to a complete resolution of the

22 class claims. See id., ¶ 12.

23         **II.    KEY TERMS OF THE SETTLEMENT**[1]

24     The key terms of the settlement are as follows:

25     **The Settlement Class (§ 1.21).** The "Settlement Class" consists of plaintiff

26 and all other persons: (a) who entered into a retail installment contract in California

27 which was secured by a motor vehicle, (b) who within four years preceding the

28

---

[1] Unless otherwise noted, all further section citations are to those in the Settlement Agreement.

filing of this action through March 31, 2022 (the date Autovest signed the Agreement) were issued a Statutory Notice by Autovest; and (c) against whom Autovest assessed a deficiency balance. Excluded from the Settlement Class are any persons who are deceased, who have filed for bankruptcy without a dismissal of his or her bankruptcy case, and/or against whom Autovest has obtained a court judgment for a deficiency balance prior to its execution of this Agreement.

**Relief To Settlement Class Members (§§ 3.01 and 4.01-4.04).** According to Autovest's most recent records, the Settlement Class consists of 76 accounts, whose deficiency balances total approximately $845,210. Upon signing of the Settlement Agreement, Autovest has permanently ceased all collection activities on Settlement Class members' accounts. Upon the settlement becoming effective (see § 1.12), Autovest will permanently forgive all deficiency balances of Settlement Class members, and Autovest will reimburse those Settlement Class members who paid on their deficiency balances 100% of the amount it has collected (in total, approximately $14,281). Autovest also will never report any information regarding class members' accounts to any CRA.

*Cy Pres* **Payment (§ 4.05).** The residue of any uncashed refund checks will become a *cy pres* award, payable to Public Counsel, a nonprofit organization in Los Angeles. Founded in 1970, Public Counsel is the nation's largest pro bono law firm focused on, among other goals, fostering economic justice by providing individuals in underserved communities with access to quality legal representation. Neither plaintiff nor his counsel has any interest or involvement in the governance or work of Public Counsel. See Block Decl., ¶ 17.

**Incentive Award (§ 6); Attorney's Fees, Costs And Expenses (§ 7); And Administration (§§ 1.03 and 10).** In addition to the relief provided to Settlement Class members, Autovest has agreed to separately pay the representative plaintiff, Chinonso Ohuche, an incentive award of $5,000. Autovest also has agreed to pay plaintiff's counsel $60,000 in attorney's fees, costs and expenses, separately from

and in addition to the other relief provided under the settlement. Arden Claims Service LLC ("Administrator") will administer the settlement. Autovest will bear all costs associated with the Administrator's services, including the costs of locating Settlement Class members and updating their addresses, and providing notice to the Settlement Class. Administrative costs, too, are separate from and in addition to other relief for Settlement Class members. Thus, the settlement will not cost Settlement Class members any money.

**Notice (§ 10.02 and 10.03, and Ex. B).** Notice of the settlement ("Class Notice") will be given within 15 days after preliminary approval. The agreed upon proposed form of Class Notice is attached as Exhibit B to the Settlement Agreement. Class Notice will be sent by U.S. mail to Settlement Class members, after updating their addresses through a "National Change of Address Search" with the U.S. Postal Service. If, after mailing of Class Notice, the postal service returns any mail with a forwarding address, the Administrator will re-mail the Class Notice to the Settlement Class members at their forwarding addresses. Autovest also will assist the Administrator in identifying Settlement Class members based on its own internal records.

**Exclusions, Objections, And Final Approval (§§ 10.04 and 10.05, and Ex. B).** The Class Notice informs Settlement Class members of their right to opt out of the settlement, and not be bound if they timely mail an appropriate "opt-out" notice, as more fully described in the Class Notice. The proposed opt-out and objection deadline is 45 days after the mailing of the Class Notice, and before the final approval hearing. Additionally, the Administrator will set up a toll-free number with an Interactive Voice Response system containing prerecorded answers to commonly asked questions as well as a voicemail box for the Settlement Class members if they have further questions about the settlement. The Administrator will employ live persons to call back all those Settlement Class members who leave messages, and if those phone calls do not resolve any question raised by a

Settlement Class member, will refer them to plaintiff's counsel at their business phone numbers.

**Release By Settlement Class Members (§ 5, and Ex. B).** The proposed release is set forth in the Settlement Agreement, and in the proposed Class Notice for the benefit of Settlement Class members. The release for all Settlement Class members is narrowly tailored to cover only the claims in this action, athe waiver of California Civil Code § 1542 by Settlement Class members is tied to those released claims, in accordance with prior rulings of this Court. See, e.g., Alikhan v. Goodrich Corp., No. CV 17-6756 JGB (RAOx), 2020 WL 4919382, at *9 (C.D. Cal. June 25, 2020); Chan v. Sutter Health Sacramento Sierra Region, No. LA CV15-02004 JAK (AGRx), 2017 WL 819903 (C.D. Cal. Feb. 14, 2017) (Kronstadt, J.).

### III.   ARGUMENT

**A.    The Court Should Conditionally Certify The Settlement Class.**

"The first step in considering whether preliminary approval of the Settlement Agreement should be granted is to determine whether a class can be certified." Schlieser v. Sunrise Senior Living Mgmt. Inc., No. LA CV19-00443 JAK (PLAx), 2021 WL 6752320, at *7 (C.D. Cal. July 6, 2021) (Kronstadt, J.). "Settlement is relevant to a class certification." Chan v. Sutter Health Sacramento Sierra Region, No. LA CV15-02004 JAK (AGRx), 2016 WL 7638111, at *3 (C.D. Cal. June 9, 2016) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 619 (1997)).

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial. But other specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

Id., at *3-4 (quoting Amchem, 521 U.S. at 620).

Whether a class can be certified initially involves determining whether the proposed class meets the requirements of Fed. R. Civ. P. 23(a). <u>Gant v. Aldi, Inc.</u>, No. LA CV19-03109 JAK (PLAx), 2021 WL 3472835, at *7 (C.D. Cal. Jan. 26, 2021) (Kronstadt, J.) (citing <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350-51 (2011); <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992)). The requirements of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). "If these four prerequisites are met, the proposed class must meet one of the requirements of Fed. R. Civ. P. 23(b)." <u>Gant</u>, 2021 WL 3472835, at *7 (citing <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996)).

Plaintiff in this case relies on Rule 23(b)(3), which allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As demonstrated below, the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied here.

**1.      <u>The Settlement Class Meets The Requirements Of Fed. R. Civ. P. 23(a).</u>**

**a.      <u>The Numerosity Requirement Is Met.</u>**

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

> "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." <u>Harris v. Palm Springs Alpine Estates, Inc.</u>, 329 F.2d 909, 913-14 (9th Cir. 1964)). "Although there is no specific numeric requirement, courts generally have found that a class of at least 40 members is sufficient." <u>See Rannis v. Recchia</u>, 380 Fed. App'x 646, 651 (9th Cir. 2010); <u>In re Cooper Cos. Inc. Sec. Litig.</u>, 254 F.R.D. 628, 634 (C.D. Cal. 2009)).

<u>Gant</u>, 2021 WL 3472835, at *7.

The Settlement Class here consists of 76 accounts. <u>See</u> § 3.01. This is a sufficient number of class members to satisfy the numerosity requirement.

1

**b.** __The Commonality Requirement Is Met.__

2

Rule 23(a)(2) provides that a class may be certified only if "there are

3

questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

4

> Commonality requires a showing that the "class members have suffered
> the same injury," Dukes, 564 U.S. at 350 (quoting Gen. Tel. Co. of Sw.

5

> v. Falcon, 457 U.S. 147, 157 (1982)), and "does not mean merely that
> they have all suffered a violation of the same provision of law." Id. The

6

> class claims must "depend on a common contention" that is "of such a
> nature that it is capable of classwide resolution – which means that

7

> determination of its truth or falsity will resolve an issue that is central
> to the validity of each one of the claims in one stroke." Id. "Rule

8

> 23(a)(2) has been construed permissively. All questions of fact and law
> need not be common to satisfy the rule." [Hanlon v. Chrysler Corp.,

9

> 150 F.3d 1011, 1019 (9th Cir. 1997)]. In assessing commonality, "even
> a single common question will do." Dukes, 564 U.S. at 359 (internal

10

> quotation marks omitted). In general, the commonality element is
> satisfied where the action challenges "a system-wide practice or policy

11

> that affects all of the putative class members." Armstrong v. Davis, 275
> F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by Johnson

12

> v. Cal., 543 U.S. 499 (2005).

13

Gant, 2021 WL 3472835, at *7.

14

Plaintiff's claims in this case present common questions of law and fact.

15

Autovest's liability is premised on the same form Statutory Notice issued to all

16

Settlement Class members, and all Settlement Class members suffered the same

17

injury of a deficiency balance on their accounts. The merits of this case can be

18

decided for all Settlement Class members by comparing Autovest's Statutory Notice

19

with the requirements of Civil Code § 2983.2(a). Although it would not prohibit a

20

finding of commonality, there are no individual issues concerning damages because,

21

by operation of law, Settlement Class members' deficiency balances would be

22

deemed waived if Autovest is found to have violated the RLA. See Cal. Civ. Code

23

§§ 2983.2(a) and 2983.8. Thus, determining the relief to be afforded the Settlement

24

Class – i.e., waivers of the deficiency balances and restitution of monies Autovest

25

collected on those balances – would involve straightforward calculations from

26

Autovest's records classwide, without any consideration of Settlement Class

27

members' individual facts. Accordingly, the commonality requirement is met.

28

### c.    <u>The Typicality Requirement Is Met.</u>

Rule 23(a)(3) provides that a class may be certified only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

> The typicality requirement is met if the "representative claims are 'typical,'" i.e., "if they are reasonably co-extensive with those of absent class members." <u>Hanlon</u>, 150 F.3d at 1020. Representative claims "need not be substantially identical." <u>Id.</u> The test of typicality is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Hanon</u>, 976 F.2d at 508. The commonality and typicality requirements of Rule 23(a) tend to merge. <u>See</u> <u>Dukes</u>, 564 U.S. at 349 n.5.

<u>Gant</u>, 2021 WL 3472835, at *8.

Here, plaintiff's claims arise from Autovest's alleged policies and practices which affected Settlement Class members uniformly. Plaintiffs and the Settlement Class members all received the same defective Statutory Notice, and plaintiff, like all other Settlement Class members, was assessed an unlawful deficiency balance. Accordingly, the typicality requirement is met.

### d.    <u>The Adequacy Requirement Is Met.</u>

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

> "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Hanlon</u>, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 985 (9th Cir. 2011).

<u>Gant</u>, 2021 WL 3472835, at *8.

Class counsel in this case, Brandon Block, has substantial experience in class actions, particularly class actions brought under the RLA to address defects in post-repossession notices. <u>See</u> Block Decl., ¶¶ 3-6. Also, rather than conflict, plaintiff's

interests with absent Settlement Class members are aligned in trying to eliminate any deficiency balances, obtaining restitution of illegally collected deficiency balances (so that full waivers of deficiency balances are effectuated), and ensuring there is no reporting of any alleged deficiency balances to CRAs. See Block Decl. ¶ 26; Declaration of Chinonso Ohuche, ¶¶ 8 and 10. Lastly, plaintiff and his counsel have and will continue to pursue this case vigorously on behalf of the Settlement Class. See id. Accordingly, the adequacy requirement is met.

## 2. The Settlement Class Meets The Requirements Of Fed. R. Civ. P. 23(b)(3).

### a. Common Questions Of Law Or Fact Predominate.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. The predominance analysis assumes that the Rule 23(a)(2) commonality requirement has already been established, see Hanlon, 150 F.3d at 1022, and "focuses on whether the 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,'" In re Hyundai & Kia Fuel Economy Litig., 926 F.3d 539, 557 (9th Cir. 2019) (quoting Hanlon, 150 F.3d at 1022). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). Where the issues of a case "require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Zinser v. Accufix Res. Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001).

"Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citations omitted). "Therefore, even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" In re Hyundai, 926 F.3d at 557 (quoting Tyson Foods, Inc., 136 S. Ct. at 1045).

In addition, the requirements of Rule 23(b)(3) "must be considered in light of the reason for which certification is sought – litigation or settlement ...." Id. at 558. A class may be certifiable for settlement even though it "may not be certifiable for litigation" where "the settlement

obviates the need to litigate individualized issues that would make a trial unmanageable." Id.

Gant, 2021 WL 3472835, at *8-9.

As noted in the previous discussion of commonality and typicality, plaintiff's claims in this case are premised on Autovest's standard policy and practice of assessing deficiency balances on the accounts of all Settlement Class members after issuing them the same defective Statutory Notice. Therefore, common issues of law and fact are likely to predominate. "Moreover, given that class certification is sought for settlement purposes, the importance of individualized concerns is reduced." Gant, 2021 WL 3472835, at *9.

### b.    A Class Action Is Superior To Other Methods For The Fair And Efficient Adjudication Of The Controversy.

"Matters pertinent to [the superiority] issue include (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Schlieser, 2021 WL 6752320, at *11 (citing Fed. R. Civ. P. 23(b)(3)).

Class resolution is superior to other available methods for the fair and efficient adjudication of the present controversy. Settlement Class members do not have a strong interest in prosecuting individual claims, which would be for a very small amount of damages, if any. These claims "would prove uneconomic for a potential plaintiff," because "litigation costs would dwarf potential recovery." Hanlon, 150 F.3d at 1023. Moreover, the RLA's anti-deficiency rule that underlies the merits of this action is a statutory claim of which most affected consumers are not aware. Besides, any Settlement Class member who wants to bring an individual action may opt out of the settlement. See § 10.04, Ex. B. Additionally, class counsel is unaware of any other similar cases brought by other consumers, Block Decl. ¶ 28,

1  and "[t]here will be few challenges in managing this case as a class action given the

2  proposed settlement will conclude the litigation." <u>Gant</u>, 2021 WL 3472835, at *9.

3  **B.**     <u>**The Court Should Preliminarily Approve The Settlement Agreement.**</u>

4        Fed.  R. Civ. P. 23(e) requires a two-step process in considering whether to

5  approve the settlement of a class action. First, a court must make a preliminary

6  determination whether the proposed settlement "is fundamentally fair, adequate, and

7  reasonable." <u>Acosta v. Trans Union, LLC</u>, 243 F.R.D. 377, 386 (C.D. Cal. 2007)

8  (quoting <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir. 2003)). After preliminary

9  approval, notification to class members and the hearing any objections by class

10  members, a court determines whether final approval of the settlement should be

11  granted. <u>See</u> <u>id.</u>

12        "Public policy prefers settlement." <u>Gant</u>, 2021 WL 3472835, at *10 (citing

13  <u>Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco</u>, 688

14  F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the

15  preferred means of dispute resolution. This is especially true in complex class action

16  litigation ...."))). Thus, "[a]t the preliminary stage, the settlement need only be

17  potentially fair." <u>Schlieser</u>, 2021 WL 6752320, at *11 (<u>Acosta</u>, 243 F.R.D. at 386).

18  As the Ninth Circuit has explained:

19            [T]he court's intrusion upon what is otherwise a private consensual
          agreement negotiated between the parties to a lawsuit must be limited

20            to the extent necessary to reach a reasoned judgment that the agreement
          is not the product of fraud or overreaching by, or collusion between, the

21            negotiating parties, and that the settlement, taken as a whole, is fair,
          reasonable and adequate to all concerned.

22

23  <u>Officers for Justice</u>, 688 F.2d at 625.

24        This Court has further summarized the preliminary approval stage as follows:

25            At the preliminary stage, "the settlement need only be potentially fair."
          [<u>Acosta</u>, 243 F.R.D. at 386.] In evaluating fairness, a court must

26            consider "the fairness of a settlement as a whole, rather than assessing
          its individual components." <u>Lane v. Facebook, Inc.</u>, 696 F.3d 811, 818-

27            19 (9th Cir. 2012). A court is to consider and evaluate several factors as
          part of its assessment of a proposed settlement. The following eight,

28            non-exclusive factors are among those that may be considered during
          both the preliminary and final approval processes:

1) the strength of the plaintiff's case;

2) the risk, expense, complexity, and likely duration of further litigation;

3) the risk of maintaining class action status throughout the trial;

4) the amount offered in settlement;

5) the extent of discovery completed and the stage of the proceedings;

6) the experience and view of counsel;

7) the presence of a governmental participant; and

8) the reaction of the class members to the proposed settlement.

See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998).

Each factor does not necessarily apply to every class action settlement, and other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). As noted, in determining whether preliminary approval is warranted, a court is to decide whether the proposed settlement has the potential to be deemed fair, reasonable and adequate in the final approval process. Where, as here, the proposed settlement is reached before formal class certification, a "more exacting review" is required, "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819 (internal quotation marks omitted). In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components."

Chan, 2021 WL 7638111, at *8.

1. **The Strength Of Plaintiff's Case Balanced Against The Risk, Expense, And Likely Duration Of Further Litigation Weighs In Favor Of The Settlement.**

Plaintiff's case is strong, as indicated by the fact that he and his counsel essentially were able to resolve this case on terms that track the very relief sought in the FAC. Still, Autovest has staunchly denied liability and there was great risk that plaintiff would, at best, be able to obtain relief for himself only in this action.

1   Without the present class action settlement, plaintiff would have been left to seeking

2   a public injunction under the UCL in his efforts to afford relief to others. As the

3   Court likely is aware, the availability of public injunctive relief under the UCL is

4   one of the most hotly contested (and complex) legal issues in California state and

5   federal courts, with cases in the trial and appellate courts granting and denying

6   requests for public injunctive relief similar to that sought by plaintiffs in this action.

7   See, e.g., Hodges v. Comcast Cable Comm., LLC, 21 F.4th 535 (9th Cir. 2021)

8   (denying a request public injunctive relief); Blair v. Rent-A-Center, Inc., 928 F.3d

9   819 (9th Cir. 2019) (allowing a request for public injunctive relief). Without a

10  settlement, this case, like others, could be tied up in appeals for years just on the

11  public injunction issue, and even if plaintiff ultimately was able to obtain a public

12  injunction, there would be no restitution to absent persons affected by Autovest's

13  conduct. On balance, the strength of plaintiff's case versus the risks associated with

14  continued litigation weighs in favor of preliminary approval of the settlement.

15          **2.     The Amount Offered In Settlement Is Substantial.**

16          The amount offered in settlement in this case is essentially plaintiff's best day

17  at trial. The penalty for a defective Statutory Notice is a deficiency waiver. See Cal.

18  Civ. Code §§ 2983.2(a) and 2983.8. That has been achieved here. The settlement

19  also includes 100% restitution to those Settlement Class members who paid any

20  money towards their deficiency balances under the UCL. There was no guarantee

21  plaintiff could achieve that result even upon a finding of liability because restitution

22  under the UCL is discretionary. See Cortez v. Purolator Air Filtration Prods., 23

23  Cal.4th 163, 179 (2000) (noting that the UCL "does not mandate restitutionary or

24  injunctive relief where an unfair business practice has been shown"). Autovest also

25  will never report any information regarding class members' accounts to any CRA.

26  See § 4.04. This ensures Settlement Class members will not suffer any lost credit

27  opportunities due to any negative issues with their accounts, not just the deficiency

28  balances. This result, too, might not have been achieved even after a successful trial

in this case because all Settlement Class members did, in fact, experience repossessions or voluntary surrenders of their vehicles. In sum, this factor weighs in favor of preliminary approval of the settlement.

### 3. Class Counsel Has Conducted Sufficient Discovery And Investigation.

Class counsel has conducted a sufficient investigation to make an informed decision regarding settlement. Prior to settlement, Autovest was cooperative in providing class counsel with data and information as to the composition of the Settlement Class. See Block Decl. ¶ 31. Autovest also certified and affirmed the class data in the Settlement Agreement (see § 3.01), and Autovest since has provided a sworn declaration from its Director of Compliance attesting to the total number of accounts in the Settlement Class; the total amount of deficiency balances assessed and outstanding against the Settlement Class members' accounts; the total amount of monies paid by Settlement Class members to Autovest towards their Deficiency Balances; sufficient means exist to identify the Settlement Class members in order to implement the terms of this Agreement; and Autovest has not sold, assigned or transferred any Settlement Class member contract or account to any person or entity. See Block Decl., ¶ 31, Ex. 2. The manner and degree of factual development conducted by class counsel is commensurate with what has been customary in counsel's other post-repossession notice class action settlements. Id. Accordingly, this factor weighs in favor of preliminary approval of the settlement.

### 4. The Settlement Is The Result Of Arm's Length Negotiations.

The settlement in this case was negotiated between experienced counsel at arm's length over the course of many months. See Block Decl., ¶¶ 10-13 and 32. Moreover, as stated in the Settlement Agreement, the parties did not discuss the issues of plaintiff's incentive award, or his attorney's fees and costs, until after they had agreed in principle as to all issues relevant to a complete resolution of the class claims. See id.; see also Ex. 1, § 2.03. Additionally, the Settlement Agreement is

non-reversionary, and class counsel's requested fee award is modest in light of the exceptional monetary and nonmonetary relief provided to the Settlement Class, as further discussed herein. Thus, this factor weighs in favor of preliminary approval of the settlement.

### 5. Experienced Class Counsel Recommends The Settlement.

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citing In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D. N.Y. 1997)); accord In re Lorazepam & Clorazepate Antitrust Litig., 2003 WL 22037741, at *6 (D.D.C. June 16, 2003) (opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement").

Chan, 2021 WL 7638111, at *12.

Class counsel, Mr. Block, is an experienced litigator in the area of consumer protection law, and particularly in cases like this one brought under the RLA, and in Mr. Block's view, the settlement reached herein is excellent, and the result couldn't have been much better, if at all, if the case went to trial. See Block Decl. ¶ 33. Autovest has ceased all collection activities on Settlement Class members' accounts, and it will permanently extinguish and forever forgive 100% of the claimed deficiency balances on accounts of Settlement Class members, thus forever waiving approximately $850,000 in purported debt for 76 accounts. This is a huge benefit to those persons in the Settlement Class, relieving them of any amounts allegedly owed to Autovest on their accounts, and enabling them to be free of collection calls and lawsuits. Additionally, Autovest will return all monies paid by Settlement Class members on their deficiency balances, so that no one has lost money as a result of Autovest's allegedly unlawful conduct. Moreover, Autovest will never make any credit reporting regarding any Settlement Class member's account or any other derogatory information (such as late payments), ensuring that Settlement Class members do not suffer any lost credit opportunities due to any negative issues with their accounts, not just the deficiency balances. All in all, the result here

*automatically* provides substantial and meaningful relief to the Settlement Class without the necessity of any claims procedures, and the terrific result in this case doesn't cost Settlement Class members any money, as Autovest has agreed to pay all administrative costs, and incentive, attorney's fees and costs awards, separately from the relief provided to the Settlement Class. See §§ 6-7.

**C.**     <u>**The Anticipated Attorney's Fees And Costs Award Is Reasonable.**</u>

Attorney's fees and costs "may be awarded ... where so authorized by law or the parties' agreement." <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 941 (9th Cir. 2011). Here, fees are authorized under both prongs: Section 7 of the Settlement Agreement provides that, subject to this Court's approval, class counsel may be awarded up to $60,000 for its attorney's fees, costs and expenses in this action, and, even in the absence of the Settlement Agreement, plaintiff would be entitled to an award of fees and costs under the RLA, <u>see</u> Cal. Civ. Code § 2983.4, and California's "private attorney general" fee statute, <u>see</u> Cal. Civ. Proc. Code § 1021.5.

Plaintiff's claims arise entirely under, and in the absence of removal would have been determined by, state law. Accordingly, the Court should apply California law in determining plaintiff's attorney's fees in this case. <u>Avery v. First Resolution Mgmt. Corp.</u>, 568 F.3d 1018, 1023 (9th Cir. 2009); <u>MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.</u>, 197 F.3d 1276, 1281 (9th Cir. 1999).

In <u>Ketchum v. Moses</u>, 24 Cal.4th 1122 (2001), the California Supreme Court re-affirmed that in statutory fee-shifting cases, the lodestar adjustment method is used to calculate fee awards: "A court assessing attorney fees begins with a touchstone or lodestar figure, based on the careful compilation of time spent and reasonable hourly compensation of each attorney … involved in the presentation of the case." <u>Id.</u>, at 1131-32 (quoting <u>Serrano v. Priest</u>, 20 Cal.3d 25, 48 (1977)). <u>Ketchum</u> also re-affirmed the application of lodestar multipliers in statutory fee awards, making it clear that a court may apply a multiplier to the lodestar in

determining the appropriate award, considering, among other things, the contingent nature of the representation, exceptional results, and the lawyer's inability to take other cases. Id., at 1133.

To date, class counsel, Mr. Block, has spent a total of 70.9 hours on this case, and his firm has incurred $295.14 in costs, with respect to the claims against Autovest. See Block Decl., ¶¶ 41 and 43, Exs. 4 and 5. Mr. Block reasonably expects that his final lodestar will be at least $50,000 through the final approval hearing. Id., ¶ 41. Mr. Block's requested hourly rate is $625, which is commensurate with hourly rates charged by lawyers of similar experience who have non-contingent specialized civil litigation practices in the Los Angeles area, and past federal and state court decisions approving his rates. See id., ¶¶ 36-40.

At the final approval hearing, class counsel intends to seek an award of $60,000 for its attorney's fees, costs and expenses at the final approval hearing. Block Decl., ¶ 42. The requested total fee award likely will involve only a modest multiplier of the base lodestar, which is more than reasonable given the nature of this litigation, the results achieved and other similar RLA class action settlements. Id. It also equates to roughly 6.5% of the total benefit to the Settlement Class, which should be computed by adding the approximately $850,000 in deficiency waivers, approximately $15,000 in restitution, and $60,000 in attorney's fees and costs agreed to in the Settlement Agreement. See In re Consumer Privacy Cases, 175 Cal.App.4th 545, 557 (2009) (when class recovery can be monetized with a reasonable degree of certainty, a trial court may "cross-check" or adjust the basic lodestar against the percentage of the class benefits); Chavez v. Netflix, Inc., 162 Cal.App.4th 43, 65 (2009) (total class benefit is measured by cash payments and noncash benefits, and class action fee awards should fall within the general 20-40% contingency fee range for plaintiffs' attorneys, and a fee of 20% of the class benefit is on the "low end" of that range).[2]

---

[2] The fee award actually is a lower percentage of the total class benefit because that calculation also includes administrative and notice costs, which are unknown. See

**D.**   **The Anticipated Incentive Award Is Reasonable.**

"[N]amed plaintiffs ... are eligible for reasonable incentive payments." <u>Staton</u>, 327 F.3d at 977. "An award of $5,000 per named plaintiff is generally considered reasonable in the Ninth Circuit." <u>Alikhan</u>, 2020 WL 4919382, at *9 (citing <u>Richardson v. THD At-Home Servs., Inc.</u>, No. 1:14-cv-0273-BAM, 2016 WL 1366952, at *13 (E.D. Cal. Apr. 6, 2016); <u>Hawthorne v. Umpqua Bank</u>, No. 11-cv-06700-JST, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015). In approving a $50,000 incentive award, one court described the factors relevant to the award as follows: "(1) the risk to the class representative in commencing the suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." <u>Van Vranken v Atlantic Richfield Co.</u>, 901 F.Supp. 294, 299 (N.D. Cal. 1995).

The Settlement Agreement in this case anticipates an incentive award of $5,000 to the plaintiff and named class representative, Mr. Ohuche. As detailed in the concurrently filed declarations of Mr. Block and Mr. Ohuche, the requested incentive award is justified by the risk Mr. Ohuche assumed in bringing this case, and his significant investment of time and effort over the course of the case to achieve an amazing result for the Settlement Class at large.

**E.**   **The Court Should Approve The Proposed Class Notice And Notice Plan.**

Federal Rule of Civil Procedure 23(c)(2)(B) requires that absent class members receive the "best notice that is practicable under the circumstances." The proposed Class Notice in this case meets all of the notice requirements of Rule 23(c)(2)(B). The proposed Class Notice provides a brief explanation of the case, including the basic claims and defenses of the parties; a definition of the

---

<u>Hartless v. Clorox Co.</u>, 273 F.R.D. 630, 645 (S.D. Cal. 2011) (in applying "percentage of the benefit" method, fees are compared to entire settlement fund, including notice and administration costs, and separately paid attorney's fees and costs) (citing <u>Consumer Privacy Cases</u>, 175 Cal.App.4th at 553-54).

Settlement Class; a statement that the Court will exclude a Settlement Class member from the Settlement Class if the member so requests by a specified date; a procedure for the Settlement Class members to follow in requesting exclusion from the Settlement Class; a statement that the judgment will bind all Settlement Class members who do not request exclusion; a statement that any Settlement Class member who does not request exclusion may, if the member so desires, enter an appearance through counsel; and an explanation of the proposed settlement and procedures for Settlement Class members to follow in filing written objections to it and in arranging to appear at the final approval hearing and state any objections to the proposed settlement.

The notice plan here entails mailing the proposed Class Notice attached to the proposed preliminary approval order at Exhibit 1, by first class US Mail to all Settlement Class members, whose identities can be reasonably ascertained based on Autovest's records. To ensure the best possible notice under the circumstances, the Administrator will run a National Change of Address Search through the U.S. Postal Service for the entire Settlement Class before mailing the Class Notice, and the Administrator will update the addresses of the Settlement Class members based on the results of the search. Moreover, if, after mailing of the Class Notice, the postal service returns any mail with a forwarding address, the administrator will re-mail the Class Notice to the Settlement Class members at their forwarding addresses. Based on class counsel's experience in other cases, the method of mailing the proposed class notice should prove to be effective in providing notice of the settlement – and the restitution required by the settlement – to a very high percentage of Settlement Class members. Block Decl., ¶ 21.

## IV.   **CONCLUSION**

For all of the foregoing reasons, plaintiffs respectfully request that the Court enter the [Proposed] Order Granting Preliminary Approval of Class Action

Settlement lodged concurrently herewith, which contains a schedule to facilitate the Class Notice and approval process.

Respectfully submitted,

Dated: April 22, 2022

LAW OFFICES OF BRANDON A. BLOCK
A PROFESSIONAL CORPORATION

/s/ Brandon A. Block
Brandon A. Block

Attorneys for Plaintiff
CHINONSO OHUCHE and the putative class

1

2

## **PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

4

5

6

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party to the within action. My business address is Law Offices of Brandon A. Block, A Professional Corporation, 9440 Santa Monica Boulevard, Suite 301, Beverly Hills, CA 90210.

7

8

On the date of execution of this Proof of Service, I cause the attached document to be served on the following person(s):

9

10

11

12

Jeffrey A. Topor
jtopor@snllp.com
R. Travis Campbell
tcampbell@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816

13

14

15

16

17

18

I served the document **by CM/ECF NOTICE OF ELECTRONIC FILING**. I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

19

20

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on April 22, 2022 at Beverly Hills, California.

21

22

/s/ Brandon A. Block
Brandon A. Block

23

24

25

26

27

28